# IN THE COURT OF APPEALS OF IOWA

No. 19-1887
Filed June 16, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**AVIANA ESHANTE SMITH,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Andrea Dryer, Judge.

Aviana Smith appeals the sentences and restitution imposed after pleading guilty to possession of methamphetamine and marijuana with intent to deliver, and failure to affix a drug tax stamp.  **AFFIRMED IN PART AND REMANDED.**

Martha J. Lucey, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by May, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

As a juvenile offender, Aviana Smith appeals her sentences after pleading guilty to three charges: possession of a controlled substance with intent to deliver, methamphetamine; possession of a controlled substance with intent to deliver, marijuana; and failure to affix a drug tax stamp. *See* Iowa Code §§ 124.401(1)(b)(7), 124.401(1)(d), 453B.12 (2019). Smith claims: (1) Iowa Code section 814.6 (Supp. 2019), which limits the right of direct appeal for criminal defendants pleading guilty to non-class "A" felonies unless defendant establishes good cause, unconstitutionally violates her due process right to effective assistance of appellate counsel and restricts the jurisdiction of Iowa's appellate courts; (2) the district court erred in failing to consider her youth and other mitigating factors under *Miller*[1] when imposing her sentences; and (3) the district court erred in ordering Smith to pay court costs, attorney fees, correctional fees and other restitution without making a valid determination of her reasonable ability to pay.

**I. Facts and Earlier Proceedings.**

Smith was seventeen years old when the State charged her with possession of over five grams of methamphetamine with the intent to deliver, possession of marijuana with the intent to deliver, and two counts of failure to affix a drug tax

---

[1] *Miller v. Alabama*, 567 U.S. 460, 477-780 (2012); *but see Jones v. Mississippi*, 141 S.Ct. 1307, 1311 (2021) ("*Miller* mandated 'only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing' a life-without-parole sentence. *Montgomery* [*v. Louisiana*, 577 U.S. 190, 211 (2016)] then flatly stated that '*Miller* did not impose a formal factfinding requirement' and that 'a finding of fact regarding a child's incorrigibility . . . is not required.'").

stamp. The criminal conduct occurred on or about February 27, 2019. Smith was already on probation after receiving a deferred judgment from an earlier first-degree-theft conviction.[2] The State amended the trial information to add charges for possession of 5-Fluoro MDMB Pica with intent to deliver and possession of a prescription drug. Ultimately Smith elected to plead guilty to three of the charges—counts I, II, and IV.[3] On September 9, 2019, the district court accepted Smith's guilty pleas.

Sentencing took place in October 2019. Smith acknowledged she violated her probation on the earlier first-degree theft, which caused the court to revoke the deferred judgment. The district court sentenced Smith to a term of imprisonment not to exceed ten years for first-degree theft, a term not to exceed twenty-five years on count I (possession of over five grams of methamphetamine with the intent to deliver), and to two terms not to exceed five years imprisonment each for counts III (possession of marijuana with intent to sell) and IV (failure to affix a drug tax stamp). The district court ordered Smith's sentences on the more recent charges to run concurrently, but consecutive to the ten-year sentence for first-degree theft. Smith appeals her sentences.

## II. Error Preservation and Standard of Review.

As a preliminary matter, the State asks we dismiss this appeal, arguing Smith failed to comply with Iowa Code section 814.6(3) because she has not shown "good cause," as required by the statute. Because Smith challenges her sentences and not the guilty pleas, good cause is established. *See State v.*

---

[2] Smith was sixteen years old when she committed the theft.
[3] All other charges were dismissed.

*Damme*, 944 N.W.2d 98, 105 (Iowa 2020) (holding good cause exists to appeal from a conviction following a guilty plea when the defendant challenges his or her sentence rather than the guilty plea). Consequently, because Smith has good cause to challenge the sentences, we need not address her constitutional arguments about section 814.6(3).

We review a sentence imposed in a criminal case for correction of errors at law. *State v. Fetner*, 959 N.W.2d 129, ___, 2021 WL 1822805, at *3 (Iowa 2021). "A sentence will not be upset on appellate review unless the defendant demonstrates an abuse of trial court discretion or a defect in the sentencing procedure such as . . . consideration of impermissible factors." *State v. Witham*, 583 N.W.2d 677, 678 (Iowa 1998) (citation omitted). Additionally, when the sentence imposed by the district court is within the statutory limits, it "is cloaked with a strong presumption in its favor." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002).

Lastly, Smith claims the district court erred in ordering her to pay court costs, attorney fees, correctional fees, and other restitution without making a valid determination of her reasonable ability to pay. The State claims the district court has not issued a final restitution order and that Smith's claim that the court erred in ordering her to pay restitution and other court costs is not appealable. "We review restitution orders for correction of errors at law." *State v. Albright*, 925 N.W.2d 144, 157 (Iowa 2019).

**III. Analysis.**

**A. Sentencing challenge.**

As a juvenile during the commission of her offenses, had the crimes imposed a mandatory minimum sentence, our cases require that Smith receive an individualized sentencing hearing and that the district court apply the *Miller* factors.[4] *See State v. Null*, 836 N.W.2d 41, 76-77 (Iowa 2013) ("[A] 52.5-year minimum prison term for a juvenile based on the aggregation of mandatory minimum sentences . . . triggers the protections . . . afforded under *Miller*," where the Supreme Court required an examination of the "hallmark features of youth" before imposing a life sentence);. *State v. Lyle*, 854 N.W.2d 378, 400 (Iowa 2014) (holding that all mandatory minimum sentences of imprisonment for juveniles are unconstitutional under article I, section 17 of the Iowa Constitution). Here such individualized sentencing was not required. Recognizing at the onset that her position is contrary to existing precedent, Smith urges individualized sentencing hearings should be mandated for "all crimes committed by juveniles." But, in *State v. Propps*, the Iowa Supreme Court "decline[d] to extend the requirement of a *Miller*

---

[4] An individualized sentencing hearing requires the court to consider several factors:

> (1) the "chronological age" of the youth and the features of youth, including "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the "family and home environment" that surrounded the youth; (3) "the circumstances of the . . . offense, including the extent of [the youth's] participation in the conduct and the way familial and peer pressures may have affected [the youth]"; (4) the "incompetencies associated with youth—for example, [the youth's] inability to deal with police officers or prosecutors (including on a plea agreement) or [the youth's] incapacity to assist [the youth's] own attorneys"; and (5) "the possibility of rehabilitation."

*State v. Ragland*, 836 N.W.2d 107, 115 n.6 (Iowa 2013) (alterations in original) (citing *Miller,* 567 U.S. at 477-78).

individualized sentencing hearing to juvenile defendants who are not subject to a mandatory minimum period of incarceration." 897 N.W.2d 91, 104 (Iowa 2017). Smith fashions a cruel and unusual punishment argument under the Iowa Constitution based on the sentences she received. As such, Smith asks us to abandon the *Propps* limitation and allow her a *Miller* individualized sentencing hearing. For good reason, we decline to accept Smith's invitation.

*Lyle* offers direction for this case when it noted:

> It is important to be mindful that the holding in this case does not prohibit judges from sentencing juveniles to prison for the length of time identified by the legislature for the crime committed, nor does it prohibit the legislature from imposing a minimum time that youthful offenders must serve in prison before being eligible for parole. Article I, section 17 [of the Iowa Constitution] only prohibits the one-size-fits-all mandatory sentencing for juveniles.

854 N.W.2d at 403. Here, Smith was a juvenile at the time she committed her crimes, but the district court explicitly said it was not sentencing her to a mandatory minimum on her conviction for methamphetamine with intent to deliver because of her youth. Thus, the district court did not apply "a one-size-fits-all mandatory minimum" sentence but instead used its discretion to formulate an appropriate sentence. *See Propps*, 897 N.W.2d at 101 (holding an indeterminate sentence for a forcible felony with no option for probation is not an unconstitutional sentence). While not verbally addressing each and every *Miller* factor, the district court had the benefit of reading the presentence investigation report, which detailed many of the factors under *Miller.* At sentencing, the district court adequately explained its rationale for imposing the sentences:

> The reason for the consecutive sentence is because you were already on probation. You had a deferred judgment for a very serious felony case. And a very short time after you were placed on

probation for that offense, you committed these crimes, which are extremely serious, particularly the class "B" felony. And due to the nature and circumstances of the new crimes, their seriousness, and the fact that you committed them while you were on probation supervision, that's why I'm imposing consecutive sentence, so that the cases are consecutive even though all of the individual counts are not.

Finally, because Smith invites us to overrule legal precedent, and because we find no legal error in her sentencing, we decline to go that route. *See State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("Generally, it is the role of the supreme court to decide if case precedent should no longer be followed.").

**B. Restitution.**

Lastly, Smith claims the district court erred by ordering her to pay court costs, attorney fees, correctional fees, and other restitution without making a valid determination of her reasonable ability to pay.[5] She asks we vacate the portion of her sentencing order imposing restitution for those items and remand to the district court to determine an amount consistent with her reasonable ability to pay. The State argues there is no final restitution order and Smith cannot appeal until a final order is issued, pointing to *State v. Albright*, 925 N.W.2d 144, 161 (Iowa 2019), which held "[r]estitution orders entered by the court prior to the final order are not appealable as final orders or enforceable against the offender." *See also State v. Davis*, 944 N.W.2d 641, 645 (Iowa 2020) (holding district courts may "only order the defendant to pay second-category restitution[] after 'all such items are before the court and the court has then made a reasonable-ability-to-pay

---

[5] On September 4, 2019, the district clerk of court filed a statement of fees and costs: $100 for court costs and $603.51 for court-appointed attorney fees. As to correctional fees, the order stated "no claims submitted as of this date."

determination'" (quoting *State v. Gross*, 935 N.W.2d 695, 702 (Iowa 2019))), *superseded by* Iowa Code § 910.2B (2021).

But the parties did not have the benefit of recent legislation when the briefing was completed.  Since this appeal was filed the Iowa legislature enacted Senate File 457 (SF 457), which changed the criminal restitution scheme under Iowa Code chapter 910.  *State v. Hawk*, 952 N.W.2d 314, 316 (Iowa 2020).  One of the changes was enactment of Iowa Code section 910.2B, which states that if a restitution order is "entered by a district court prior to June 25, 2020, [it] shall be converted to [a] permanent restitution order."  Section 910.2B specifically included "restitution order[s] that do[] not contain a determination of the defendant's reasonable ability to pay the restitution ordered."  Our supreme court recently explained the statutory changes to the criminal restitution scheme:

> [A] defendant who believes he is unable to pay category "B" restitution must request that the district court conduct a reasonable-ability-to-pay analysis.[6]  The defendant must request the hearing at

---

[6] Iowa Code section 910.2A(2) provides:

1. An offender is presumed to have the reasonable ability to make restitution payments for the full amount of category "B" restitution.

2. If an offender requests that the court determine the amount of category "B" restitution payments the offender is reasonably able to make toward paying the full amount of such restitution, the court shall hold a hearing and make such a determination, subject to the following provisions:

a. To obtain relief at such a hearing, the offender must affirmatively prove by a preponderance of the evidence that the offender is unable to reasonably make payments toward the full amount of category "B" restitution.

b. The offender must furnish the prosecuting attorney and sentencing court with a completed financial affidavit.  Failure to furnish a completed financial affidavit waives any claim regarding the offender's reasonable ability to pay.

sentencing or within thirty days of the district court entering the permanent restitution order or is subject to the full payment of category "B" restitution.

*State v. Dessinger*, 958 N.W.2d 590, 606 (Iowa 2021) (internal citations omitted).

When issued in October 2019, Smith's sentencing order directed Smith to pay "category B" restitution "to the extent that Defendant is reasonably able to pay, and as applicable . . . ." We interpret this restitution order as temporary in nature rather than a final restitution order. The sentencing judge highlighted this conclusion at the sentencing hearing by stating, "Ma'am, some of those amounts of restitution won't apply to you in these cases. Some most certainly will, such as court costs and court-appointed attorney fees and expenses. I don't have the final amounts for those restitution categories at this time." By operation of section 910.2B, the restitution

---

c. The prosecuting attorney, the attorney for the defendant, and the court shall be permitted to question the offender regarding the offender's reasonable ability to pay.

d. Based on the evidence offered at the hearing, including but not limited to the financial affidavit, the court shall determine the amount of category "B" restitution the offender is reasonably able to make payments toward, and order the offender to make payments toward that amount.

3.a. If an offender does not make a request as provided in subsection 2 at the time of sentencing or within thirty days after the court issues a permanent restitution order, the court shall order the offender to pay the full amount of category "B" restitution.

b. An offender's failure to request a determination pursuant to this section waives all future claims regarding the offender's reasonable ability to pay, except as provided by section 910.7.

4. If an offender requests that the court make a determination pursuant to subsection 2, the offender's financial affidavit shall be filed of record in all criminal cases for which the offender owes restitution and the affidavit shall be accessible by a prosecuting attorney or attorney for the offender without court order or appearance.

5. A court that makes a determination under this section is presumed to have properly exercised its discretion. A court is not required to state its reasons for making a determination.

order is converted to a permanent restitution order. Under the new framework, Smith must "first exhaust remedies before the district court before launching an appeal of a restitution order." *Dessinger*, 958 N.W.2d at 607. Until Smith has exhausted her remedies before the district court, we are precluded from hearing her appeal of the restitution order. *See id.* Thus, we remand to the district court with instructions to allow Smith to follow the procedures required by section 910.2A.

## IV. Conclusion.

We find no error in Smith's sentencing, thus we affirm the sentences ordered by the district court. As to Smith's restitution claim, we remand to the district court so that Smith can follow the procedures required by section 910.2A.

**AFFIRMED IN PART AND REMANDED.**